FILED
2023 Sep-27 PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

CHRISTY A. HENDRICKS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No.: 6:22-cv-01008-JHE

**MEMORANDUM OPINION**[1]

Plaintiff Christy A. Hendricks ("Hendricks") seeks review, pursuant to 42 U.S.C. § 405(g) and § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Hendricks timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings.

## I. Factual and Procedural History

Hendricks filed an application for a period of disability and DIB on September 17, 2019, alleging she became disabled on April 25, 2019. (Tr. 222). Hendricks' claim was initially denied on February 14, 2020. (Tr. 145). On March 18, 2020, she filed a Request for Reconsideration,

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

which was subsequently denied on August 4, 2020. (Tr. 151, 154). After Hendricks requested a hearing, on October 14, 2021, a hearing was held before Judge Cynthia Brown, an Administrative Law Judge ("ALJ"). (Tr. 32). On November 3, 2021, the ALJ issued an unfavorable opinion, finding Hendricks "not disabled." (Tr. 12, 26). Hendricks filed a Request for Review of Hearing Decision on December 15, 2021. (Tr. 219). On June 15, 2021, the Appeals Council denied Hendricks' request. (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner. On August 9, 2022, Hendricks initiated this action. (Doc. 1).

Born on December 3, 1980, Hendricks was 40 years old on her alleged onset date. (Tr. 25). Hendricks has at least a high school education and has past relevant work as an office manager (a skilled job with a sedentary exertional level) and a security guard (a semi-skilled job with a light exertional level). (Tr. 24-25, 50).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would

[2] In general, the legal standards applied are the same whether a claimant seeks Social Security Income or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**III. Statutory and Regulatory Framework**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2020

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

**IV. Findings of the Administrative Law Judge**

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Hendricks had not engaged in substantial gainful activity during the period from her alleged onset date of April 25, 2019, through her date last insured ("DLI"), September 30, 2021. (Tr. 17). At Step Two, the ALJ found Hendricks has the following severe impairments: seizure disorder, lumbar and cervical degenerative disc disease, migraine headaches, osteoarthritis, attention deficit disorder, and panic disorder. (Tr. 17). At Step Three, the ALJ found Hendricks did not have an impairment or combination of impairments that meets

or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19).

Before proceeding to Step Four, the ALJ determined Hendricks' residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through her DLI, Hendricks had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a), except she can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to noise, vibration and any exposure to hazards such as commercial driving, large bodies of water, unprotected heights and hazardous machinery. She would need the option to change position from standing or walking to a seated position or vice versa as frequently as every 30 minutes while remaining at her workstation and on task. She can understand, remember and carry out simple instructions and maintain attention for two-hour periods. She should have no interaction with the general public. She can tolerate occasional interaction with co-workers and supervisors. Changes in the work setting should be gradual and occur no more than occasionally.

(Tr. 19-24). At Step Four, the ALJ determined Hendricks was unable to perform any of her past relevant work. (Tr. 24). At Step Five, the ALJ determined, based on Hendricks' age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Hendricks could perform. (Tr. 25-26). Therefore, the ALJ determined Hendricks had not been under a disability and denied her claim. (Tr. 26).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court,

however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Hendricks contends the ALJ's finding that she can perform a reduced range of light work is not supported by substantial evidence. (Doc. 12 at 17). Specifically, Hendricks contends (1) the ALJ failed to account for her migraine headaches in her RFC (*id.* at 18-20); and (2) the ALJ failed to properly evaluate her credibility (*id.* at 21-28). Because the first of these reasons necessitates reversal and requires remand, the undersigned does not discuss Hendricks' second argument, which is based on credibility.

**A. Consideration of Hendricks' Migraine Impairment**

Hendricks alleges that, while the ALJ found her migraine headaches to be a severe impairment, the ALJ failed to account for them in her RFC finding. (Doc. 12 at 18). The Commissioner contends that this characterization is inaccurate. (Doc. 13 at 14). Specifically, the Commissioner points to the fact that the ALJ limited Hendricks to avoiding any exposure to hazards and concentrated exposure to noise and vibrations; understanding, remembering, and carrying out simple instructions; maintaining attention for 2-hour periods; and tolerating limited social interactions and changes, but did not include further functional limitations. (Doc. 13 at 14) (citing tr. 19-24). It is unclear how this limitation would help with Hendricks' condition.

Medical records from September 2018 (seven months prior to Hendricks' alleged onset date) indicate that Hendricks reported she was experiencing 10 debilitating migraines a month. (Doc. 12 at 20) (citing tr. 549). The Commissioner contends these records do not support Hendricks' argument. (Doc. 13 at 14). However, the medical records do indicate that Topamax[4]

[4] According to *WebMD*, Topamax "is used alone or with other medications to prevent and

was not able to control Hendricks' symptoms, so she used Fioricet[5] (butalbital) occasionally. (Tr. 549). The records provide that Hendricks reported she would need 10 or more Fioricet some months and that, although she took this medicine, "[s]he had not had a change in the individual character of her headaches." (*Id.*).

There is other record evidence that Hendricks continued to experience migraines even with medication. Treatment records from Alabama Neurology and Sleep Medicine dated January 30, 2020, indicate Hendricks had been dealing with migraines and, despite medication, the migraines had "been about the same." (Tr. 682). The medical records note that Hendricks treated her migraines with Topamax, but continued to use "an occasional Fioricet[,] which work[ed] well." (Tr. 682-84).

Additionally, Hendricks completed a Headache Questionnaire on June 20, 2020, detailing the severity of her migraines. (Tr. 324). Hendricks stated her migraines occurred "at random[,]" and she could "never really tell when one is going to attack," (Tr. 322). The migraines ranged in severity and duration, with some of the migraines lasting "4-6 hours" and others lasting "24-72 hours." (Tr. 322). Hendricks stated that during these migraines she cannot tolerate light; experiences blurry vision; sees flashes of light; experiences dizziness or lightheadedness; cannot tolerate sounds; and "frequently" vomits. (Tr. 322). Hendricks also explained that these migraines affect her ability to concentrate to the extent that she "cannot concentrate on anything at all as simple as fixing [herself] a microwave dinner or reading a page or two in [a] newspaper." (Tr.

---

control seizures (epilepsy). This medication *is also used to prevent migraine headaches* and decrease how often you get them." https://www.webmd.com/drugs/2/drug-14494-6019/topamax-oral/topiramate-oral/details (last visited June 28, 2023) (emphasis added).

[5] Fioricet is used, in combination with other medications, to treat tension headaches. *See* https://www.webmd.com/drugs/2/drug-15869/fioricet-oral/details (last visited June 28, 2023).

322). Hendricks testified that she experiences these migraines "anywhere from one to three, sometimes four [times] a week." (Tr. 39).

Hendricks asserts that, due to her migraine headaches alone she would miss multiple days of work per month. (Doc. 12 at 19). At the hearing the vocational expert testified that all work would be eliminated if Hendricks were to miss three or more days of work per month. (Tr. 53).

In response, the Commissioner contends that while her migraine symptoms were not fully controlled by Topamax, Hendricks was able to manage her migraines by also using Fioricet. (Doc. 13 at 14). Additionally, the Commissioner explains that the ALJ considered Hendricks' migraines and limited her RFC to avoiding any exposure to noise and vibration; understanding, remembering, and carrying out simple instructions; maintaining attention for two-hour periods; and tolerating limited social interactions and changes but did not have further functional limitations. (Doc. 13 at 14) (citing 19-24). This is not a complete picture of the records.

The Commissioner argues that Hendricks is simply asking the Court to "play the role of ALJ" and reweigh the record evidence. (Doc. 13 at 16-17). Specifically, the Commissioner contends that, to find reversible error, the Court would have to credit Hendricks' evidence despite contradictory evidence in the record. (*Id.* at 16). This Court understands that it may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Instead, upon reviewing the record as a whole, the undersigned finds the ALJ has not supported her findings with substantial evidence. The only evidence the ALJ points to when concluding that Hendricks' migraines were fully considered are the medical records revealing that Hendricks was using Topamax and Fioricet to help control her symptoms. (Doc. 13 at 15). However, those records plainly show that Hendricks was continuing to experience these ailments, and it is unclear how Hendricks would be

able to work while experiencing headaches/migraines at the level reflected in the treatment notes (or while taking this medication). The ALJ's conclusion that Hendricks' symptoms were fully or largely controlled is undermined by the treatment records (as well as Hendricks' consistent reporting) outlined above. Simply, it is unclear what "conflicting evidence" the Commissioner is relying on when the records cited show Hendricks' migraines were not drastically reduced, but "controlled" or retained at a high frequency.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Hendricks' claim for Social Security Disability benefits is **REVERSED**, and this action is **REMANDED**.

DONE this 27th day of September, 2023.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE